November 2012, 10-82, TimeBASE v. Thomson Corporation. Mr. Hostin.  May it please the court, thank you for hearing our case. I'm prepared to leave much of what may concern the court to our briefs. What I'd like to focus on in the time for oral argument this morning is what I believe to be the most reasonable reading of the case. of the independent claims of the 592 patent and the independent claims of the 228 patent. I do not think that either the appellee or the district court read those claims correctly in light of the language in the claims themselves or in light of the language in the specifications of the two patents. Keep in mind the 228 is a continuation in part of the 592 patent. The 592 patent began with a provisional patent application in Australia in 1997 from TimeBASE which was a legal publisher. It's still there and it's written in the context of Australian legislation. That's the examples given in the embodiment. Much ado about text-based data, so it's important to address what I think the real relationship and meaning of text-based data and portions are. The old way of dealing with revisions was, as the patent describes, to provide an entire reprint of a statute as amended or a section as amended and then completely replace the old with the new. Mr. Hostin, why doesn't, as the district court held, each means every? I'm sorry? Each means every. That's a key part of the claim construction in the 592 patent, right? Yes, Your Honor. The word was extended too far. There's an argument here over whether we weighed the issue in the district court. We did not. What we told the district court was that if each was to mean every, it should not be extended to portions outside the plurality. The district court did so when it ruled that every portion in the text-based data had to be encoded. That's not the thrust of the invention. That's not the way the claims are worded. The patent says several times in the summary of the invention, in the abstract, three times regarding the summary of the invention, that the invention is a plurality of predefined portions where each of the predefined portions is encoded with a link. The encoding is limited to the plurality. My impression is that the district court also felt that even if each were limited to the plurality, that the burdens of coming forward and establishing that were not met. Is that a fair statement? I think, Your Honor, that the court said we didn't prove that every portion in the text-based data was linked, and that's why it granted summary judgment. Not every portion in the plurality. No question. Our position in the district court has always been that only the plurality must be linked. Given the express statement in the summary and the abstract that only the members of the plurality have to be linked, I think it follows from that that only the members of the plurality must be linked. In other words, the claims must be read in light of the specification. Furthermore, in Column 6 and in Figure 6, later on described I think in Column 11, the process is described and the inventor says, or inventors, say that the embodiments take information. That's the input in Figure 6. They divide that information into what they call blocks or pieces of text, or sometimes the terms text block is used. That is a smaller chunk of text, and that's one of the major ideas behind the invention. That's why it's different from replacing a whole document or modifying a document via the individual word approach. So, first you have information, text-based data in this case, legislation, journals, articles, and cases, but we'll stick with legislation. Secondly, it is divided, and only then does it become portion. Thirdly, one cannot have an encoded portion until one has a portion. The sequence described in Column 6 is take the information, divide it into portions, portions therefore exist at that point, and then, and only then, encode those portions with linking means so that they can be organized in the multidimensional space. Portions have to exist before they can be encoded. It therefore follows that not all portions in the text-based data are necessarily encoded, and the rest of the claim confirms that. You get to the first limitation of the claim, and it refers to a plurality of predefined portions of text-based data being stored. That's the first mention of portion. You get to the second limitation, where one of those portions is then modified and stored, and then you get to the third limitation, which is where all the fight arises. Is your argument stronger in respect to the 228 patent, where it refers first to the plurality of portions? Perhaps it is. I haven't thought about it that way. My focus on the 228 has been with respect to the displaying issue rather than... Which didn't have exactly that language. Right. There's a bit in the briefs about what happened in the file history and how language got moved around. In any event, when one looks at the third limitation, it begins with a plurality of links, and each of the predefined portions of text-based data, so each predefined portion can only refer back to the first limitation, it says of text-based data because that's where they come from, each of them must have a link. If I have a plurality of links, and all portions must be linked, it seems to me I have an invention that does not work. I then go on to the next limitation, which refers to a plurality of attributes, and that's how the links are created, and if there's only a plurality of attributes to get the portions into multidimensional space, I can't put all the portions into multidimensional space. The claim starts to fall apart. You get to the last part of the last limitation, and it says the portions, the plurality of portions are organized in multidimensional space. What about the interpretation of display? My view of it is that the publisher, in this case the accused infringer, does the display, because the 228 claims, I'm thinking mostly of claim one, but the other claims are comparable. The 228 claims generally follow this kind of organization. They allow the user to do something. Well, that's clearly not the user allowing itself to do something. Then, and what the user is allowed to do generally is a search, like one would get on Westlaw and plug in a case citation or a statutory section. What do you do about the district court's evidentiary finding that Timebase failed to point to evidence that would allow a reasonable fact finder to conclude that Thompson West performed the display in this case? Two answers to that, Your Honor. First, we cited testimony from Ms. Agard, who was the defendant's 30B6 designee on this subject, and Darla Agard talked about circumstances where Time Thompson demonstrated the invention to persons by itself doing the display. The second point is, if the display is to the user in response to the search, which is generally the way the claims read, and that's almost exactly the way claim one reads, if the display is to the user in response to the search, the way Thompson would have us read the sentence in the claim is, the user displays to the user in response to the user's search. That does not seem good English, does not seem grammatical, does not seem logical, and while Thompson makes much of the fact that there are screen colors and font sizes and so forth that are controlled by the user, sure, this invention is independent of the type of monitor or the type of commuter. And there's also, at least according to the district court, no evidence that the end user is contractually bound to display. We cited, I believe, in our reply brief the fact, and there should be some A-cites in the appendix, to the fact that there were contractual agreements that Thompson could cancel a subscription under the circumstances provided in the agreements, that a user had to have a password. What you're driving at is, if the user does, in fact, do the displaying step, then is there the kind of relationship that allows infringement to arise? And that's an issue that is not yet resolved. But my feeling is that the claims of the 228 patent, read the best way, read the most reasonable way, is that it is Thompson displaying to the user. What is displayed to the user? It is text-based data or portions of text-based data and links. That can only come from the publisher. That is not something that can be created by the user. If we disagree with you, do we have to hold this case for Akamai? Probably so. Probably so. I think that would be true. The other thing on the 228 is that the specification is consistent with our view. It says the embodiments allow or permit the publisher to display the evolution of data over a period of time. Most frequently, the different versions occur in the instance of time, but the patent contemplates that you can have display of different versions according to various criteria, and that's the multi-dimensional space. It also seems to me that if you look at claim one, it strikes me, third limitation, there's language that says, and said at least one modified predefined portion of text-based data being encoded with at least one linking means. Well, if all of the portions in the text-based data must be encoded with linking means, why is the language there? I think the answer is that the language is there, but it's because it's referring to the members of the plurality using the plurality of links and the plurality of attributes to organize the plurality of space. Keep in mind that the patent says that this is not a static kind of thing. The patent has a reference where it says the publishing system facilitates continual updates. Well, depending on how many legislatures you want to monitor, in Australia you have a number of federal and provincial legislatures. In the United States, it's a much, much larger number. Depending on how many you want to monitor, you have a tidal wave of information coming in. This information has to be processed. It seems totally unreasonable to me to say that once I have divided the text-based data into portions, all of them must be instantaneously encoded. That seems to be physically unrealistic and physically impossible. And Figure 6 doesn't contemplate that you can't store portions. You just said if we don't agree with you on displaying, we have to… Well, if we do agree with you on displaying, we also have to agree with you on each of the plurality constructions. Yes, yes. And I think, I go back to the specification. The specification time and time and time again talks about the plurality and the system includes. I see I'm getting down into my rebuttal time here. Yes, you are. Let's hear from the other side and we'll save you rebuttal time. Thank you, Your Honor. Thank you, Your Honor. It may have pleased the Court. I do want to address one issue that Judge Wallach asked about with respect to proof before I jump into my argument. The appendix site that Mr. Hassany was going to is A9470 to A9471 on the issue of display. And there is no testimony from a witness who says that there's a display with an electronic video device. It's simply not in the record. And this district court carefully reviewed the record. I want to make one very big point, Your Honors, and then I'll go into each and then display. The very big point is this is a failure of proof case. What do I mean by failure of proof? Let's just take a big picture look. This is a computer software case and on appeal, they literally are not citing to the expert report from their technical expert or the deposition from their technical expert. Even though you would review what that expert said in the report and in the deposition and alike, most favorable to them, they literally are not citing it. And that's because… Maybe they can suffer a judgment, is it not? Yes, and so what they could be saying is, listen, on summary judgment, you look at inferences in our favor, they could be saying that. But they're not even mentioning their technical expert on appeal. They assume that we know that. Yes, Your Honor. And they don't have any proof whatsoever of infringement. That's the problem here. They simply have no proof. And I'll begin with each, Your Honor. The district court found nothing in the record, nothing, to support a finding that each predefined portion in the accused components of Westlaw was encoded with the linking means. And the key language in the limitation reads, each predefined portion of said text-based data being encoded with at least one linking means. Each means, every one considered separately. You left out the front clause, which talks about a plurality. Well, Your Honor, that's a plurality of linking means, if you're talking about that limitation. To go to the front clause, you have to go up two clauses, that there are plurality of predefined portions. Yes, but it's still in the same claim. It is, Your Honor. And now let's ask the question, how does TimeBase want this court to rewrite the claim? And here's what TimeBase wants this court to say. That the claim, instead of saying each predefined portion is encoded with the linking means, which is what the plain language is, that would mean every single one, that's undisputed. They're saying you need to change it as follows. You need to put in said plurality of predefined portions. Either put in those words or have that concept. So number one, you have to have said, treated like an antecedent basis. No, what you have to have is to understand what the invention is, as described in the specification, and as reflected in the claim. You've got a claim of a few words and a specification of I don't know how many columns, lengthy. And so you try and figure out what it is they're talking about. And isn't this where the difference between you lies? I would say, Your Honor, I'm not sure there's a huge difference because what we're saying is as follows. Each predefined portion requires a link. That's the language. Each predefined portion being encoded with the linking means. On its face means exactly what it says. They're suggesting the court needs to change that to said plurality of predefined portions based on what Your Honor just mentioned, the specification. And I'll get to that in one minute. But if you just stop for a second, adding said, adding plurality, and then changing predefined portion from singular to plural is doing a lot of work to that limitation. And that's a lot of rewriting going on. So then you look at the specification and you say, Well, does the specification compel that or suggest it? And when you go to the specification, the specification supports the concept that the invention intended to allow a publisher to encode every single predefined portion. The patent criticized conventional systems because they had what they said are haphazard hyperlinks. In other words, we don't like systems where there's a few links encoded over here and a few links encoded over there. And what they said was with the embodiment of the invention, that's the phrase they used, the embodiment of the invention, it is possible to list all logical connections within a data set. In other words, Your Honor, the invention contemplated a system where you would encode every single predefined portion. So it's not surprising, it's not a cause for concern that they have a plain English limitation that says each predefined portion being encoded with the linking means. In fact, at their reply brief at page five, here's what they say. And this is why, Your Honor, I'm saying we don't have a big disagreement. Here's what they say in their reply brief. They say it is possible to encode all stored sections, but the 592 patent does not mandate that one do so. And our point is simply, if in the specification you say that one of the benefits of the invention, what's nice about this invention, what's good about this invention, is it's possible to encode every single predefined portion. If you make that clear, which they do in a number of ways, then when you write a claim that has the language, each predefined portion being encoded with the linking means, it's reasonable to say we're just going to allow that plain language to carry the day. In other words, you're saying it's mandated. I'm saying that the plain English in the claim, there's no reason to disturb the plain English. We'd be in a different position, Judge Laurie, if the language in the claim said something else and I was up here saying, you know what, given what they say in the specification, you need to change it. You need to do something special with this plain language. What we're saying is if when you draft a claim you unambiguously say each predefined portion being encoded with the linking means, there's no reason to disturb that when the specification is consistent with that. And there's no rule of construction. There's no case. In fact, Your Honor, I will say, I'm going to mispronounce this. It's S-K-V-O-R-E-C-Z. Judge Newman was the author. So there's a consonant that's probably not pronounced here, but I'll call it Corbett's. That's close enough. And that was a real simple wire stand case. It was about a wire stand where you put stands on top of each other. And the claim required at least two wire legs early on. And Judge Newman, you were asking me, well, what about early upwards set of plurality? This was similar. Earlier up in the claim it said you have to have at least two wire legs, which is the same as the plurality, at least two. But later on in the claim it said you need an offset for each wire leg. Just like here, each predefined portion must be encoded with the linking means. And what the court said is that the Board of Patent Appeals erred in holding that some wire legs of the device need not have an offset when the claims state that each wire leg has an offset. Because the specification made clear that that was what the invaders had in mind. Well, Your Honor, the issue, the overriding issue here is to see what they invaded and read the claim as they explained it. Your Honor, yes, you always look at the specification, but in this case when you look at the specification, the inventors clearly had in mind an invention where it was possible to encode every single predefined portion. That was clearly what they had in mind, and they mentioned that in their reply group. So we think the plain language in the claim is consistent with exactly what they're saying in the specification. And in this case, you also have a situation where if you're going to say each wire leg requires an offset, just like here, if you're going to say each predefined portion requires a linking means, then you're stuck with that. And it's interesting, Judge Lurie was asking about the 228 patent. That does have different language. Each of a plurality, that would be a different case. If I was talking to you about each of a plurality, it would be different. I will say that we would still be arguing we should win because you say is there a plurality? Yes, there is. All right. And then does each of the plurality have a linking means? We would say yes because you… The trial court didn't distinguish between those two claims. That's right, Your Honor. That's right. And because on the 228, we focused only on display because that was so clear an issue. But our point is that if you draft a claim that is so clear that it's each, and we know each means each. The district court said that. It's everyone considered separately. It's so clear, and what you're saying is completely consistent with the specification, then we don't see any reason to disturb the judge's finding, particularly when there's no expert testimony that supports their theory of the case. There was reference to figure six. I just want to make this point. Figure six is about preparing data for the system, and we're not suggesting you can't prepare data for the system. But once the data is in the system, it is encoded, and you have these links. And so we don't think that that argument carried today. We explained it in our brief, but we don't think that's a reason to disturb the holding, particularly when in their own reply brief they're suggesting it's possible to encode all predefined portions. We really don't think that's in dispute. When you tell the world in your specification it is possible to encode all predefined portions, it doesn't make sense to say on appeal, Your Honor, there's no possible way you can encode all predefined portions. This is the argument that counsel was making. I want to switch briefly now to display. I think we are in the world of Akamai here, and so we're going to, I think, have to wait to see what the Federal Circuit says in Akamai. But what I will say is this, is that if the current standard or something similar holds, then we believe that this court should affirm. The district court found nothing in the record to support that Thompson performed the method step of displaying. I've already addressed Judge Wallach's earlier question. There really is nothing. This case, from the beginning, was about outside end users. And by outside end users, I mean not employees of Westlaw. It would have been a completely different case had they focused on employees of Westlaw as end users. But they did not. But Westlaw displays. Well, Your Honor, if I was talking to you at a coffee shop and you said, does Westlaw display? I might say, well, Westlaw certainly sends information out, and I understand that that information is displayed. But here in this patent case, I'm sorry, Your Honor, I don't want to interrupt. That's all right. What you're saying is displayed to somebody. And moreover, there's a where-in clause, which talks about the consequences to the user. Exactly, Your Honor. In fact, the court's construction is really clear, and this is what ends it. The court's construction is as follows. Displaying is showing on an electronic video device, capable of changing in real time in response to inputs, such as a CRT monitor, an LCD monitor, or a projector and screen. It's undisputed that Thompson does not provide an electronic video device to end users. It's not like when Thompson sells Westlaw, it says on the good news. And by the way, I am old enough to say I remember law school in the 1980s when Thompson did supply the end users with the video device. They actually did that. But here, they don't do that, and there's no suggestion they do. And so the end user is operating the electronic video device. And that means that if an end user does not have an electronic video device, literally there can be no infringement. And I don't mean no literal infringement. I mean literally there can be no infringement. So for example, a Westlaw salesperson comes to an end user and says, here you go, I'm giving you Westlaw. And gives everything that's in Westlaw. Everything they say it has. It has the ability to allow display. They have the ability to get the ball rolling. And then they wait. If the end user says, just so you know, I don't have a video display device. I don't have it. I don't have it. You can't infringe. There will be no infringement. And that's undisputed. So you can't infringe without an outside end user having a video display device that has the software that allows for displaying. And then the end user has to operate it. And the end user has to intend to display it. And the end user has to click on things and say, no, I'm going to display. In other words, when a tree falls in the forest, there's still a sound. Well, I'm afraid that's a slightly general question, Your Honor. I'm sorry? Yes, absolutely. And you need an end user. If you don't have an end user, then you're out of luck. Now, I will say this. The example I have to get more contemporary and get out of my 1980s legal education is something called Netflix, which my teenage daughters use. And that's where they receive in the mail a disk. And in fact, the specification talks about you can do this on a disk. Or they receive over the Internet a video stream. And I think it's reasonable to say that Netflix is not displaying the movies to my teenage daughters. I think my teenage daughters are using our television set. And without our television set, we can't display it. And, yes, we're displaying it to ourselves. We are watching movies, whether we're putting in a disk, which is contemplated in the specification, or whether we're video streaming. And the specification is very clear that there's hardware here. There's diagrams. What I think I hear you saying is that when it is displayed, then if the other conditions are met, then there would be infringement. Well, Your Honor, the diplomatic way I would say it is the only issue on appeal is display. If we're in a position where this court, because of Akamai, changes the standard and it gets remanded, we have other non-infringement contentions on the 228 patent that we have not addressed on this appeal. So we only move for summary judgment on display. But had we lost summary judgment, we would have gone to trial on other non-infringement issues. So there's links, and there's the plurality issue that we talked about of each, and there's other issues. So just to be clear, Your Honor, we move for summary judgment on the single most clear reason to win for each patent. Each for the first patent, the 592, display for the second patent. Had the court found a fact dispute, we would have gone to trial on many issues. So it was a matter of litigation strategy for us to pick the single best reason to win. There are many other non-infringement on both patents that we could be using, including multi-dimensional space, which is sort of the elephant in the room. That's a big non-infringement defense that I'm not even addressing because it's not at issue. So where we are, Your Honors, is when you bring a case on appeal and you don't even reference your own expert, then you're down to talking about a brochure or two pages in a deposition, and they simply don't have evidence here that we think would allow this case to go forward. And the district court did a very thorough job of analyzing the record and even giving suggestions. On each issue, the district court said, you know, you could have thought about things like statistical sampling. You could have said, based on the nature of the hardware and software together, it has to encode every single predefined portion. She made all these suggestions, and they didn't ever do any of those. Instead, their expert literally did not even attempt to meet the claim limitation. And if you don't attempt to meet the claim limitation, you can't rely on a couple brochures or a snippet from a deposition testimony. We think, for that reason, it's a failure of proof, and we ask this court to affirm on both issues. Thank you, Your Honors. Thank you, Mr. Gross. Very briefly, Your Honors, with respect to, first, the 592 patent, I believe my colleagues misconstrue and equate data set with database. The remark to which Mr. Gross refers in our reply brief is with reference that it's possible to encode all the connections within a data set. The district court said that every portion in a database had to be encoded. That was a big expansion. A data set could be United States Code annotated for 1996 through the current. That's Thompson. The data set could be New York legislation for a period of time. That's Thompson. The data set doesn't have to be Wyoming or New Mexico or Tennessee or Kentucky. That's the case with Thompson. That is a matter of choice for the publisher, and that's why the patent is written in terms of plurality, but nevertheless saying that you can handle very complex schemes with this patent. With respect to the 592 claim, I don't think I hear any reason from Thompson on why our reading of the specification is incorrect. I think the reading of the 592 specification fairly and abundantly without any disclaimer supports our reading of Claim 1 of the 592 patent. I understand the differences between the 228 and the 592, but the differences in draftsmanship of claims I do not think can be used to override the express statements in the specification of the 592 that the system includes a plurality of predefined portions, each of which has linking means. With respect to the 228, just a couple of comments. Page 16 of our reply brief says this. It gives a picture of ResultsPlus from the Defendant's Westlaw system, and it says, ResultsPlus is an exclusive westlaw.com feature that automatically displays related ALR articles, Amdure annotations and articles, and so forth and so on. That's 809525 in the appendix. That's an automatic display. We gave several other examples. Thompson is displaying, in our view, and it's accomplishing the step that it says it does not accomplish. One last thing about the display issue and what was brought up in the district court. What the meaning of display was in terms of what's before this court was not argued in claim construction. It was argued only in summary judgment. I understand and I intend no disrespect, but I do not believe that I am satisfied or that this court should be satisfied with some aspects of what the district court did. I think its analysis is incorrect, and I think it also did not pay any attention to Ms. Muldoon's declaration, which established it was unrebuttable. It's not even mentioned in the court's opinion. And what it said was every portion shown in Thompson's declaration from Ms. Souter, one of their lawyers, every portion shown had at least one link. We should have survived on that alone, and the district court does not address it. That's not adequate when we were the non-Muldoon. Thank you. Thank you, Mr. Hastinian. Mr. Gross, the case is taken in your submission.